Okay, the first case is U.S. v. Julio Aviles. Thank you, Your Honor. May it please the Court, my name is Quint Sorenson and I do represent the defendant, Julio Aviles. Could you speak up a little bit, please? Apologies. Yes, I can. I'd like to reserve three minutes for rebuttal if I may. Okay. Thank you. The mandatory sentence of life imprisonment imposed upon Mr. Aviles under 21 U.S.C. 841B was inconsistent with the statute as it existed at the time of sentencing. Well, why don't we first get to the, I don't, my colleagues might disagree with this. You've got two arguments here. It seems to me whether or not we look to the time of the imposition of sentence or the time the sentence becomes final. There's a harder lift for you than whether or not the categorical approach gets you out of the New Jersey predicate offenses. So maybe you can just address that. Absolutely. Start with the First Step Act. I'm happy to do so. There is no doubt that under the First Step Act the punishment imposed in this case would be impermissible. That is because the First Step Act eliminated the life term, mandatory life term of imprisonment under the 841B. If the sentence had been imposed before the infected date. Quite right. And it was here, correctly? Well, it was imposed only if imposed is only looked upon as referring to imposed by the district court. But that is not a reading. Who else would impose it? The Court of Appeals has an imposed sentence. It can be finally imposed in the sense of the final judgment becoming final. And I think that's the reserve. What's the authority for imposed meaning anything other than the district court? I think there are two ways to look at it. Of course, you have the Clark decision which found exactly that. But going beyond the Clark decision, you can look at the text of this particular statute and its purpose to find exactly what imposed should mean in this circumstance and whether it should be viewed as a limitation restricting the application of the Act. But unless there's an ambiguity in the statute, we can't look to the legislative history. I think there is. Well, it wouldn't be legislative history necessarily. It's the language of the statute. Which says imposed. I'm sorry? Which says imposed. It does. But it first states that the Act shall apply to cases in which the offense occurs before the date of enactment of the Act. And then it goes on to specify that specifically it shall apply if sentence has not been imposed. Now, that language is viewed by the government as a restriction on the Act's applicability. But it is not phrased in that way. It does not say, for instance, the Act shall apply only if. Well, what do you think Congress is going to think if we go and say, well, imposed really doesn't mean imposed. That's really what you're saying. No, I don't think that's it at all. I think what Congress. That's really what you're saying. I think what Congress understood is that this court generally presumes that judgments of sentence are going to not be final until the appeal period is concluded. And when it said imposed. Okay. They're not final. But we review sentences. And we review the sentence that was imposed by the district court. And if you say that the sentence is not imposed until there's no further point of review, how can we review what the district court did in imposing the sentence if the sentence hasn't yet been imposed? It's the same way that this court reviews final judgments and final orders. Those are deemed under statute and rules. There is a final judgment entered by the district court. That's what makes a final judgment or order appealable. That's why this court can take advantage and take it over. But still, this court then considers in this context, in terms of applicability, that the judgment is actually not final until the appeal period is concluded. So there are two different ways to view these statements. The phrasing is different because in that sense, in terms of a judgment, we're looking at the judgment when the judgment is imposed, if you will, or when the judgment is entered, which is different from when the judgment becomes final. So the language in certain things is a bit different. I agree, Your Honor, but there is references in the statute, in the statutes governing appealability of orders, in rules and statutes, stating that the order must be final, that it must be a final order. Well, but there is a final order ten days after the imposition of the sentence. So you're asking us to find that imposed means final, final, final in the district court and final in the court of appeals, aren't you? No, I'm saying that it has to be finally imposed. Again, we're working against the presumption that changes in the law are going to be applicable in cases on direct appeal until the judgment becomes final. And when we're talking about imposition of the sentence, that means the sentence is not finally imposed, the judgment of the sentence is not finally imposed until you get to the final appeal period. And, again, I think that is actually – So why didn't Congress simply say that, until the judgment is final? As they have in other cases, in other – in AEDPA, they talk about the judgment becoming final. I actually think they said it probably because of Dorsey versus the United States. This particular issue was confronted in Dorsey. That is, the Fair Sentencing Act, in that case, had been interpreted by circuit courts not to apply to sentences that had not been imposed as of the date of the enactment. That was because there was no language in the Fair Sentencing Act that referred to it. The Supreme Court reversed and said, no, it actually does apply because the purpose of the act is so clearly remedial, we can go beyond that. And by necessary implication, we find that Congress intended it to apply, particularly to these circumstances in cases in which judgment of sentence has not been imposed. Congress looked at that, looked at the result in Dorsey, did not want it to occur in this case with the First Step Act, and so addressed particularly that situation. What the language in this case does not tell you, it does not restrict in any way the applicability of the act to cases on direct appeal. So at that point, you do need to, I believe, look both at the other language in the statute, in the act, and also to the purpose of the act, and I think that really gets you to the point where you see that it has to apply to cases on direct appeal. And I cite this court with respect to the text to two particular provisions. That is 402B, which deals with the applicability of the safety valve provisions. And in that circumstance, the act states in 402B that the amendments shall apply, quote, only to convictions that are entered after the date of enactment. That is a limiting language, only to. That's what they used there. They did not use that in this particular, in 401C. And then you look at 403, which deals with the Fair Sentencing Act. And in that provision, Congress made amendments to apply even to post-conviction motions. And so in that circumstance, they really specified when it should apply. Here in 401C, it makes reasonable sense to assume that they struck a middle ground. They wanted it to apply to greater circumstances after entry of a conviction to cases that were pending while the act was enacted. That's on direct appeal, and that is before the court of appeals. But they did not want it to apply to cases on post-conviction motion. That's why they used sentence imposed, meaning finally imposed. So when a final judgment is made. But they could have easily said exactly that. Well, they could have, but you can have an inference at this point in time because the language is not necessarily clear as to applicability on cases on direct appeal. And if you go down to the purpose of this particular act, I don't think there's any question that this is quintessential remedial legislation. It is intended and designed to protect individuals in the federal criminal justice system from the draconian sentences previously authorized by Section 841B. And those individuals include not only people on direct in the district court, but also individuals who are on direct appeal whose judgments of sentence have not become final who can still benefit directly from the act. All right. Could you go into the predicate acts? We have a situation here where Mr. Avillas was convicted. And in his indictment and in one instance in his guilty plea colloquy, it specifically states that heroin was the drug here. Well, if you go into the, I mean, that is the assumption. We need to go through Mathis jumping through means and elements. Indeed you do, Your Honor. And that is because the standard categorical approach applies only unless and only if, unless the statute is divisible. Well, how does Mathis help you? Doesn't Mathis get you to exactly the same place? Not at all. I don't think, I think Mathis helps me immensely. The categorical approach, the standard categorical approach, there's no question that these three statutes do not satisfy that approach because they include cover and control dangerous substance flunitrazepam. So you have to go down and you have to find that the statutes are divisible because drug type by drug type. That is you have to find that the statutes set forth different offenses. Right. Because then we have to find out whether or not the drug type involved him. That's the secondary inquiry. Once you find, you have to find it's divisible first. And that you have to look at state law. Let's assume it's divisible. I'm not sure if you all agree on that. Let's assume. I still don't think there's enough evidence. Like I said, I would like to go back to the divisible point because I think that's a more important point to some degree. But we can take the, in terms of the New Jersey convictions for instance. You've got to slow down. You started out about ten minutes ahead of where I could keep up with. Okay. Not about half an hour ahead of where I can keep up. You have the same problem I have. You speak very, very quickly. I apologize, Your Honor. The, so the first question in determining whether we can find that this, these convictions are heroin specific, is whether the statutes may be deemed divisible. The second question, only if you find the statutes are divisible under state law based on drug type, only then do you get to the issue of whether the records of conviction actually show that heroin was the drug involved. How would it not be divisible? We have this list of drugs. But the point is you have to look, the fact that an itemized construction is provided, an itemized list of facts is provided in a statute, does not establish or create a presumption that those facts are independent elements. But how about the fact that the fines that would be attributable depending upon the drug are different? Doesn't that point to the fact that they're elements and not means? No. And you're talking about provision 35-4. No. The fact is that the element of the statute in that particular case says that the value of all controlled dangerous substances. That's the element. Now the facts you have to determine in terms of figuring out how that element is satisfied are what controlled substances are involved, what their value is. But that can be different, and it doesn't matter what the element is. It's the value of those. So you could have three separate cases in which juries find the value is $100,000. In the first case, the controlled substance could be exclusively heroin. In the second case, exclusively cocaine. In the third case, it could be a mixture of that including flu, nitrazepam, or anything else. That doesn't matter. Those findings are what math has referred to as brute facts, means. They go to the element. They are not independent elements of themselves. The statute only requires a finding of the value. And with respect to the principle. But that can't be right. It can't just be the value because it's got to be the value of Kleenex. It's got to be tied to the value of the controlled substance. Oh, absolutely. But that is a fact underlying the element finding. That is not an element of itself. So in other words, whatever controlled dangerous substance is actually found at the location. It doesn't change how the penalty is going to be applied. It only changes the finding of the jury. What the final finding, that is the element of the value of the controlled substance. Whatever they are, it doesn't matter. The element is the value of all controlled substances. An analogy would be if the statute instead said the value of all contraband. Nobody would argue in that circumstance that whether a car is present is an element of the offense. Whether stolen jewelry is an element of the offense. No. Those are facts.  Not elements of themselves. And that's how both of these New Jersey provisions especially view the facts underlying the finding that there is an element of a controlled dangerous substance. The nature of the controlled dangerous substance doesn't matter because it doesn't affect the penalty. It doesn't affect the nature of the crime. It doesn't affect the grading. For 35-4, regardless of the CDS of controlled dangerous substance, the penalty is going to be 10 to 20 years. For 35-7, it's going to be 3 to 5 years. And for the Maryland provision, 602, again, it's going to be 5 years. That is the standard provision. To what extent does the rule of lenity come into this or should it come in at all? I think the rule of lenity could play into it. It could play into basically any case. But in this circumstance, I think there is a very good reason because we have a question. We have a statute which doesn't distinguish between drug type for penalty purposes, which doesn't create gradations like the Pennsylvania statute did in United States v. Henderson. We have a very different two sets of cases here, two sets of statutes, excuse me, which can be interpreted and I think should be interpreted in accord with the rule of lenity, not to be divisible. And, in fact, I think that makes all the more sense because this question is based principally on state law and there are no state decisions holding that drug type is an element under these particular provisions. I still get back to the fact that we have heroin clearly indicated in the documents. And in Mathis, the court said, conversely, if those documents reference one of the alternatives and exclude the others, that could indicate listed alternatives are elements. Oh, I'm sorry, I didn't mean to interrupt you. No. And that is the third source. Mathis lists three sources in terms of telling why something is divisible. One, case law from the state as already referenced. Two, the statute, does it create facts that require a penalty purpose? Again, that does not support it. Three, and it shouldn't be able to overturn the first two, which would be doing the case in this one. But three, you peek at the documents, the judicial records to see how the process. You don't just peek. You're looking at them and they can be determinative, can they not? No, they cannot be, Your Honor. That is because for these purposes what you're doing is peeking at the documents to see how they generally treat drugs. Do they generally treat drug type as an element rather than a fact? The question here is not whether they actually show that the offense at issue was for heroin. It's whether it treats as an element drug type heroin. When I am peeking at those documents, I'm looking at what kind of drug was involved. And the point of the categorical approach was that you had old cases where you didn't know what kind of drug was involved, where you didn't know important facts of the case. But in a case here where it's very clear from the court documents that heroin is involved, why can't we simply acknowledge what is in the record? Because in that circumstance, without making a finding first that drug type is an element under the statute, you would be basing the finding that the categorical approach has been met not on the elements of the statute, but on the conduct. I think you're talking about angels dancing on the head of a pin. It is not, Your Honor. It is very much the basic distinction of the categorical approach. But Mathis says we can use looking at the documents to inform whether it's an element or mean. Precisely, Your Honor, and that's the distinction I'm making. What Jadroth was asking, as I understood it, was, well, we can see that the conduct at issue here was heroin, that this was a heroin offense. That is a conduct inquiry. That is not the inquiry prescribed by Mathis in terms of visibility. We're looking at the court documents only to see whether they actually treat heroin as an element. And these documents do not. And if you look at the indictment in the New Jersey offense for maintenance of a controlled dangerous substance facility, you see this. If you see the indictment, and it appears on page 546 for count one, it refers to the offense. I'm going to cut you off too much, Ben. I'm going to have to. Your light's on. You reserved, I think, three minutes for rebuttal. So we'll hear back from you on rebuttal. That sounds great. Thank you very much, Your Honor. Good morning, Your Honor. Steven Cerruti on behalf of the United States. Looking first at the First Step Act, I believe the language that Congress included in the First Step Act is clear, that the new reduced penalties would not apply to Mr. Avies here because his sentence was imposed prior to the date of enactment. That is, the best reading of the statute is that sentence imposed means exactly what your typical person would think that it means, when the district court says, I sentence you to, in this case, life in prison, not upon further review. And I do agree with Mr. Sorensen that the reason Congress wrote the statute that way was in response to Dorsey. Dorsey reached this exact same result and said, look, we're going to say that we're going to apply this statute to folks who are sentenced after the enactment, not before, but for crimes that were committed beforehand. And when you look- Let's assume that the defendant, he shows up for sentencing, he's brought in from custody, judge comes on the bench, but the judge is told by the defendant that the defendant just found out this morning, that morning, that his counsel was ill, had been hospitalized and would be hospitalized for four and a half months. Asks for a continuance. The case is continued for four and a half months, exact same fact. When the defendant comes into sentence, when the client gets, when the lawyer gets out of the hospital, you would agree the most he could get would be 25 years in prison under the First Step Act, which would then clearly apply. But since his counsel showed up and he was there on time, he's exposed to life. Does that kind of a scheme to interpret this, this result in a way that gets to that result, allows for that randomness between whether or not someone is exposed to 25 years in prison or life in prison, because of the timing of the calendar? Does that make any sense to you? And why shouldn't we look at this as remedial statute and follow that line of argument, Mr. Sorensen? Well, I think, you know, Dorsey, Justice Breyer and Dorsey recognize that any time that you draw lines, you are going to have some of those disparities result. One of the things that was talked about in Dorsey, however, was how do you minimize those disparities? And I think that if you look at, yes, you might have a situation where that occurs because the language is clear in the statute that is only once a sentence is imposed. And if a sentence has not yet been imposed in a case like that, then it would apply if they came back four-and-a-half months later after the relative was in better health. However, you can say that there would be perhaps even more likely examples of the opposite happening if you follow the interpretation that Mr. Aviles encourages this court to do here. You could have whether the first step act applies to a defendant may depend purely on how long it takes a circuit court of appeals to issue a decision in his case. So you could have two defendants sentenced to the exact same sentence on the exact same day if one of them chooses not to take an appeal but the other one chooses to take an appeal, no matter how frivolous, and it takes a while for the court to decide, maybe for legitimate purposes. Or one court decides in one year and another court decides in three years. Exactly. And maybe argue that habeas should allow for habeas. So I think that situation is much more likely to occur than a scheduled sentencing that's been put off. So under Dorsey, looking at, well, how are we going to minimize those kinds of disparities because Congress has drawn the line where it has, then it makes sense to go with the standard language, you know, what most people believe sentence imposed means. And in fact, Dorsey also discusses if you want to avoid the overall strictures of the savings statute, you have to employ the language here. You must look for interpretive considerations that point clearly to something that, you know, cuts against what the savings statute would force upon interpreting courts. And there's certainly nothing here that clearly says, oh, you're going to treat this as being sentence imposed as meaning once all review is exhausted. And even turning to the rule of lenity, what is the basic consideration for the rule of lenity? It's putting defendants or potential defendants on notice. Well, what we're talking about here is actually giving them a more complex, maybe not to lawyers who deal with this every day, but to potential defendants saying, well, imposing sentence doesn't mean when the court comes and says I sentence you to life in prison. It means something else. Well, the courts would be really burdened with a lot of the most difficult cases coming back for resentencing as well. Those that are kind of in the pipeline on appeal where there's a life sentence. Congress might have been thinking also about the burden on the courts of having to resentence all the toughest cases. I'm very sensitive to burdens on the courts, absolutely. So wrapping up on the first step back, unless there are any further questions, I think the language is clear and I think that Dorsey supports the government's interpretation here. Your colleague didn't talk about the Fourth Amendment suppression of the Franks hearing. Presumably he would on rebuttal. Do you want to talk about that at all? Well, I mean, the overarching point, and I don't know that there's much that I need to expand upon beyond what I put in the brief, however, was the key here is at the stage that the court was proceeding at at the time, it was the burden of Mr. Avila's to prove or at least make a substantial showing. I think that's that's the language that there was reckless. Provision of false facts. But how could it not be reckless? What kind of people can be I mean, not necessarily false, but it can be an omission disregard for the truth. Right. This is a cut and paste job and to cut and paste into a affidavit for a search warrant in a way that leaves out information, which may be germane to the magistrate judge's determination of the reliability of the informant. Could that be reckless? Well, I think you look at exactly what was cut and pasted. It wasn't the entire thing. The judge. And again, this is somewhat speculation that it was a cut and paste job. But that's why he's arguing for full Frank's hearing, because there's too much speculation here. Sure. But I mean, that does seem to be the most likely reason for this. You have a general statement about how controlled buys happen and generally control buys involve marked currency or photocopied currency. In this case, there was other personal property that was used. You did not have a situation necessarily where he did. The police officer is trying to hide the fact that there is personal property being. We know that we just don't know that. That's exactly why he's asking for a full Frank. So you're assuming good faith and innocent negligence, if you will. But how can we assume that without at least some kind of hearing and findings? Well, there is the preliminary hearing. And under Frank's, it is the burden of the defendant to make that preliminary substantial showing that there was reckless disregard. And, you know, the court in Wilson and Yousef has stated what that standard is. And it's higher than just, oh, I've pointed to something that may not be true. It's, you know, some significant or substantial showing that there is willingness to affirmatively distort the truth with a high degree of awareness of the falsity. And that the applicant must entertain serious doubts about what he wrote and did lie in his in the pre Frank's hearing. Did he not about what was exchanged, that there was no contract, nothing else exchanged other than cash? No, he didn't say that at all. He admitted that. And there was the whole discussion of personal property versus negotiable instruments. And he said straightforward that there were those items that were exchanged on, I believe, two occasions as opposed to marked currency. The so there was no falsehood that I found in the money regarding special relationship between the two. That is an argument that there was a separate relationship. That is an argument that Mr. Sorenson has raised. However, when you look at the transcript, the context of the question about this other relationship makes it clear that that relationship was that the confidential informant was a buyer and Aviles was the seller. So as far as what sort of separate relationship, I don't believe there was one. The government doesn't believe there was one. There was a buyer seller relationship, which is certainly made clear by the fact that the confidential informant is participating in controlled buys, continuing her role in that same relationship as a buyer and Aviles as the seller. And then, you know, briefly to finish up on the suppression issue, there's the materiality requirement. Again, Franks, even at the preliminary hearing stage, requires there to be a substantial showing of materiality. And Franks directs a court at that point, even at the preliminary stage, to look at, OK, if we put in these facts that were omitted or we put in the accurate facts, if they were inaccurate facts, does it change the probable cause finding? And that there's I don't see any way that you can say that changes here because you have all of this information that is provided by the confidential informant, which is absolutely corroborated through independent sources and other information that the police already had. She participated in eight controlled buys total, five with Mr. Aviles. You put all of that together and look at the story as a whole. There is still probable cause. And that means all of these errors, all of these omissions. How is there probable cause? Lay that out. Well, in the in the brief, I certainly listed all of the various information that was available to the police at the time. Some of it coming from the confidential informant. Aviles was known to them as a potential drug dealer. She comes to them and she says, look, I have made buys from from this individual. He is a drug dealer. It confirms what they already know. She's able to independently show that her knowledge of his residence. They are able to independently confirm that. She talks about how she has engaged in things that involve the black Chevy Tahoe that they find out is registered to his son. And when they do controlled buys, one of them, I think, actually takes place in the Tahoe. Another one, he gets the drugs out of the Tahoe and gives it to her. There are the eight controlled buys themselves, including the two that are at issue. Are you saying? Well, it would be. Yeah. The two that involve property as opposed to currency would be involved as well. OK, but I think it was obviously you still got six. And so therefore, it's not you wouldn't have to take those out. Because we're talking about omitted information that it was property. You would tell the magistrate in that case or or the the warrant issuing judge. Look, instead of currency, it was property, legal property that was exchanged. How is that going to make a difference about whether you can count those control buys? And I misspoke. He wrote in his affidavit that only money was exchanged for buys. It was correct. And that's and that's what Mr. Sorensen and Mr. Villas are saying. That's where Mr. Monk lied. And our position is most likely it was just negligent drafting. But back to your question. So you would still include those two controlled buys. You would just have to give the information that it would be property instead of currency. Do you want to address the issue of the predicate act? The Mathis. Absolutely. And again, in the brief, I think I laid out exactly how the following the Mathis roadmap leads you to the same result that this court led to or this court arrived at in Henderson with regard to the Pennsylvania statute. And that actually one panel of this court, and I'll be at non-presidential opinion, has already concluded siding with the government with regards to two C thirty five dash seven under the New Jersey statutes. United States versus Powell recently decided. And the fact is there is no clear case law out of New Jersey that states whether the identity of the controlled substance is an element or whether it's just a mean. So then we have to go through that Mathis roadmap and look at all the different things that Justice Kagan talked about in Mathis to determine whether they are elements or means. And I think if you follow that roadmap and you look at things like the suggested pleading forms, which have a space for putting in what the controlled substance is, you look at the jury instructions which have a space for what the controlled substance is. You look at the punishments that are available under each of these two statutes, either the jail time or the fines. It requires a finding of exactly what the controlled substance is. You then move on to the fact that you do have listed schedules, a closed universe of what can be a controlled substance. That was something that was relied upon in Henderson. That's something that you look at for determining that it's not just a list of illustrative examples, which is what Mathis was worried about. And so what you have is something where you do have to prove what the controlled substance is. How do you determine illustrative ways versus exhaustive list of crimes? Can you do that just by looking at the list? As you say, you're looking at other things. I think an illustrative list might be something along the lines of saying, okay, it's illegal to do A, B, C, or D, or something like that. Very much like the residual clause, which, of course, we don't have to worry about anymore. That's what this is. It's illegal to do heroin, da, da, da, da, or X. But it is a closed list. It is a closed universe. You can't go beyond what are in those schedules. Well, in Mathis, it was a closed universe. It was storage, or water, or air, or it was still a closed list. Any kind of vehicle. Water vehicle. Yeah, water vehicle. Well, it gets into the interpretive question of what is a vehicle and all sorts of that thing. So I think that was really the consideration there, whereas here. I just find that test not helpful. It doesn't get you there. The whole categorical thing is not very helpful. Well, you know, I'm about to go on vacation, and I need it after having been dealing with the categorical approach as long as I have recently. And I think, again, you apply the Mathis test. You go through that road map. You apply Henderson, the reasoning in Henderson that this court has already applied to the Pennsylvania statute, which, yes, it's slightly different, but not in any meaningful way as the court in Powell that I referenced just a minute ago did. You will find that here, using the categorical approach, it entitles you to then find that the controlled substances are elements. That allows you to then use the modified categorical approach and look at those documents, which, yes, you are allowed to peek at anyway under the categorical approach. And those documents say that Mr. Aviles was convicted twice in New Jersey of peddling heroin. Those are predicate crimes, and therefore the life sentence was appropriately imposed. I see my time is up. Thank you very much. Thank you. Thank you, Your Honors. I'll start with Frank's issue, if I may, because I heard what seems to be some mischaracterizations I'm sure I've mistaken. But as you mentioned, Your Honors, the only thing that is required at this stage is to make a substantial preliminary showing that there were reckless misstatements in the affidavit that may be material to the warrant application. And while there was some discussion over whether there was a generalized statement that money was used in all of them, that maybe that was a cut-and-paste job, there was actually a direct misstatement. The warrant application itself states on page 59 that at the April 15th transaction specifically, money was transferred. It describes that exactly. But there has to have been probable cause or no probable cause if you take out those facts or throw in the facts that were omitted. How would there not be probable cause here in any event such that whatever was omitted was not material? Well, I think in this case you have a few reasons for that. First of all, you do have the two very clear discrepancies on what was involved in the controlled buy. But there are so many controlled buys. But then you have also this evidence regarding the informant's heroin addiction, regarding her past conduct with police. The informant's heroin addiction could make the informant more reliable. Certainly it does. But we have some issues here that really do go to the critical component of assessing the informant's reliability and her conduct. And remember here we're talking about not the final probable cause determination by preponderance of the evidence. We're just talking about getting to a hearing where we can examine the witness, examine the informant, to determine what was the negotiable interest, what was her history. Well, but they followed up on all of the things. They went to the property. They saw cars pulling up in the back for a short time and things being exchanged from the window. They went and saw his prior history. I mean, they confirmed that he was a drug dealer with their own independent investigation. I think that may be the final conclusion of the district court. The district court would be entitled to make that determination in the first instance. But what we're talking about here, not to belabor the point, is whether there should even be a hearing. But materiality is the third prong of the hearing. But only if, like I said, that does not require that you show materiality by preponderance. It merely shows that there might be an issue with materiality. You might be able to establish that you have sufficient evidence to call it into question. I'm trying to get at what that might be. What is the likelihood, not even likelihood, possibility. I think if you can examine the issues of the informant, maybe she did have a preexisting relationship with Mr. Avias. Maybe she was acting out of motivation to incriminate him. Maybe she was planting things. Anything of that nature. Show me a CI who is not acting out of motivation to incriminate the buyer. Otherwise, why would you go do the... And she might be lying about the circumstances. There might be a host of things that we were simply unable to ask about. And that's the purpose of the Franks hearing itself, is to allow these questions so we don't have to engage in what you called correctly. But you did have a full pre-Franks hearing. Well, it wasn't a full pre-Franks hearing because we were not able to examine the informant, for instance, what the negotiable instruments were, that kind of thing. So this was a situation in which clearly a pre-Franks hearing was not sufficient. To what extent do we have to balance, at least in the briefs, it appears there's some concern about revealing the identity of the informant. I don't know if that's because of future use or safety or what the problem is. Well, she has now been identified. I'd assume the defendant knows who she is. Now we do. So she was, I mean, there is really no issue with that at this time. She did not testify at trial, though the defense counsel was not able to examine her because she didn't get called and she had the Fifth Amendment right. Jane, do you have any questions at all? Yeah, let me ask one question. When you have, here you have eight statements, some of which are good, some of which you question the facts about whether there was money, what the relationship was. But say out of these eight statements you have three that qualify as strong support that these drug transactions took place and that there is probable cause to search for drugs. Can you simply throw out the bad descriptions and focus on the good ones? It depends on the nature of the problems and it depends on the nature of the omissions and it depends on the nature of what they didn't disclose regarding the informant's heroin addiction, for instance. It may be necessary to throw out all of the information she provided, which is done in cases like Glover and Lull, or it may not be. But the point here is that at that point the descriptions you're talking about in terms of when you throw stuff out, what you throw out, what you keep in, has to be a determination made after a full Frank's hearing. That's when you can determine exactly what was omitted and exactly what was recklessly said and how you need to assess it. Thank you very much. Thank you. Taking the matter under advisement, I think both counsels have very helpful arguments. You're very skilled law advocates and we thank you for your presentations.